NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      Plaintiff,<br><br>v.<br><br>JORGE ALBERTO DEL PINO VELASQUEZ,<br><br>      Defendant. | Civ. No. 12-6252 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

Stuart F. Delery, Esq.
Assistant Attorney General, Civil Division
Colin A. Kisor, Esq.
Acting Director
Office of Immigration Litigation, District Court Section
Glenn M. Girdharry, Esq.
Senior Litigation Counsel
Christopher W. Hillis, Esq.
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

  *Attorneys for Plaintiff*

Jorge Del Pino Velasquez
2 Elizabeth Street
Rear Apartment
Hackensack, NJ 17601

  *Pro Se Defendant*

**DEBEVOISE, Senior District Judge**

This matter arises out of a denaturalization proceeding initiating by Plaintiff United States of America against Defendant Jorge Del Pino Velasquez.  On October 5, 2012, the United States filed a Complaint against Mr. Velasquez, pursuant to 8 U.S.C. § 1451(a), setting forth causes of action for illegal procurement of U.S. citizenship and concealment or willful misrepresentation. The Complaint seeks an order (i) revoking Mr. Velasquez's citizenship in the United States; (ii) cancelling the Certificate of Naturalization, No. 21795990, previously issued to Mr. Velasquez; (iii) restraining and enjoining Mr. Velasquez from claiming any rights, privileges, benefits, or advantages under any document evidencing citizenship in the United States; and (iv) directing Mr. Velasquez to immediately surrender and deliver to the Attorney General the Certificate of Naturalization issued to him, as well as any copies thereof, and any other indicia of United States Citizenship in his possession, including any United States passport.

Mr. Velasquez did not respond to the Complaint.  Consequently, the United States now moves for Default Judgment, or, in the alternative, Summary Judgment, in its favor, on the Complaint.  Mr. Velasquez does not oppose the motion.  For the reasons set forth below, the United States' Motion for Summary Judgment is GRANTED.

I.   BACKGROUND

On September 7, 1995, the Hackensack Police Department arrested Mr. Velasquez and charged him with aggravated sexual assault against his stepdaughter when she was less than thirteen years old, pursuant to N.J.S.A. 2C:14-2a(1).  On March 22, 1996, the Office of the Bergen County Prosecutor indicted Mr. Velasquez for charges arising out of unlawful sexual activity with his stepdaughter that occurred between July 15, 1987 and June 30, 1994.  On November 13, 1996, Mr. Velasquez pleaded guilty to Count Seven of the indictment, Criminal

Sexual Assault in the Third Degree, N.J.S.A. 2C:14-3a, for acts committed sometime between July 15, 1991 and June 30, 1994.

On January 13, 1995, Mr. Velasquez filed a naturalization application with the Immigration and Naturalization Service ("INS"). Part 7, Question 15 of the application asks Mr. Velasquez to attest that he had "[n]ever (a) knowingly committed any crime for which he had not been arrested; or (b) been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations[.]" (Gov't. Ex. E.) In response to subsection (a), Mr. Velasquez checked the box marked "No". (Id.) In response to subsection (b), Mr. Velasquez also checked the box marked "No". (Id.)

On September 13, 1995, the INS interviewed Mr. Velasquez under oath in conjunction with his naturalization application. At the interview, an INS interviewing officer confirmed the answers provided to the questions presented in the application. The interviewer specifically confirmed Mr. Velasquez's answers to Part 7, Question 15, where he marked "No" for subsection (a). With respect to subsection (b), Mr. Velasquez told the interviewer that he had been arrested only in relation to a deportation proceeding against him in 1985, prompting the interviewer to change Mr. Velasquez's response from "No" to "Yes", and writing "Deport" and "1985" under subsection (b). (Id.)

That same day, the INS approved Mr. Velasquez's naturalization application, and he took an oath of allegiance stating that, as of September 13, 1995, he was a citizen of the United States. In turn, Mr. Velasquez received a Certificate of Naturalization, No. 21795990.

On March 28, 2012, pursuant to the Civil Justice Reform Act ("CJRA"), the United States sent a letter to Mr. Velasquez, stating that the United States intended to bring a civil action

in federal court seeking revocation of this United States citizenship.[1]  Mr. Velasquez signed for this letter.  On April 19, 2012, Melvin R. Solomon, Esq. sent a letter to the United States stating that he was representing Mr. Velasquez.

On October 3, 2012, the United States sent an email to Mr. Solomon, stating that it was planning on filing a denaturalization complaint against Mr. Velasquez within the next few days, along with a waiver of service of summons.  On October 4, 2012, Mr. Solomon responded to this email, stating that the last contact he had with Mr. Velasquez was in September 1997.  Mr. Solomon had "no idea where he is or if he is dead or alive."  (Gov't., Ex. L.)  Moreover, the lawyer that had referred Mr. Velasquez's case to him had passed away.  Mr. Solomon stated that he was willing to accept the complaint against Mr. Velasquez, and that (1) if he could reach Mr. Velasquez; and (2) Mr. Velasquez retains him, he will acknowledge service.  Mr. Solomon concluded that he would let the United States know if he remained unable to locate Mr. Velasquez.

On October 5, 2012, the United States filed a Complaint against Mr. Velasquez and forwarded a copy to Mr. Solomon.  On October 10, 2012, the United States sent a letter to Mr. Solomon, along with a Waiver of the Service of Summons form.  A representative from Mr. Solomon's office received the letter.

On October 18, 2012, the United States sent Mr. Solomon a follow up email, asking if there was any further information about Mr. Velasquez and/or Mr. Solomon's representation of him in this matter.  Mr. Solomon responded that day and said he was out of the country and would return in ten days, and that he was still trying to locate Mr. Velasquez.  On November 9,

---

[1] Between April and September 2012, the United States issued a subpoena to the Bergen County Prosecutor's Office to obtain documents regarding Mr. Velasquez's criminal history.

2012, the United States sent Mr. Solomon a second follow up email. On November 19, 2012, Mr. Solomon and the United States spoke by telephone, where Mr. Solomon indicated that he no longer represented Mr. Velasquez.

On January 10, 2013, after receiving Mr. Velasquez's current address of record from the Bergen County Prosecutor's Office,[2] the United States perfected service of the Complaint, Summons, and Civil Cover Sheet upon Mr. Velasquez using a professional process server. That same day, the United States filed an Affidavit of Service with this Court.

On March 11, 2013, after sixty (60) days had passed from the date that the United States filed its Complaint in this matter, Mr. Velasquez had yet to respond to the Complaint. On April 18, 2013, pursuant to Federal Rule of Civil Procedure 55(a), the United States submitted an affidavit regarding Mr. Velasquez's failure to plead or otherwise defend against the Complaint.

## II.     DISCUSSION

The United States now moves for default judgment, or, in the alternative, summary judgment, in its favor, on the entire Complaint. In doing so, the United States argues that (1) default judgment against Mr. Velasquez is appropriate because he failed to respond to the Complaint and the time in which to do so expired; and (2) summary judgment for the United States is appropriate because it has met its burden to demonstrate sufficient grounds for denaturalization. Mr. Velasquez does not oppose the motion.[3]

### A.     Standard of Review

---

[2] Mr. Velasquez is a Meghan's Law registrant.

[3] The Court will decide this motion based on whether the United States met its burden of demonstrating sufficient grounds for denaturalization because a default judgment in a denaturalization proceeding is inappropriate. See Klapprott v. United States, 335 U.S. 601, 612-13 (1949) ("Courts should not . . . deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance.").

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

B.      The United States' Motion for Summary Judgment

"[T]he right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." Fedorenko v. United States, 449 U.S. 490, 505 (1981). Thus, the Supreme Court "has held that the Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." Id. (quotation omitted). "The evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt." Id. (quotations omitted).

8 U.S.C. § 1451(a) allows this Court to revoke an order of naturalization "on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation[.]" Naturalization is "illegally procured" when an individual fails to strictly comply "with [any or] all the congressionally imposed prerequisites to the acquisition of citizenship." Fedorenko, 449 U.S. at 506.

Here, the United States sets forth multiple bases upon which to denaturalize Mr. Velasquez for illegally procuring his United States citizenship and for concealment of a material fact and willful misrepresentation. However, the Court will only address one such basis: that Mr. Velasquez procured his United States Citizenship through willful concealment and misrepresentation because he failed to disclose the commission of a crime for which he had not been arrested (aggravated criminal sexual contact), and his subsequent arrest for that crime, and further misrepresented that had neither committed nor was arrested for such a crime, during the course of his naturalization application process.

To show that citizenship was procured through willful concealment, the United States must meet the following four independent requirements: "[T]he naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured

7

citizenship as a result of the misrepresentation or concealment." <u>Kungys v. United States</u>, 485 U.S. 759, 767 (1988).

"With regard to willfulness, the Government need not prove that [Mr. Velasquez] intended to deceive the INS." <u>United States v. Rebelo</u>, 646 F. Supp. 2d 682, 697 (D.N.J. 2009) (citations omitted). Rather, the United States must show that Mr. Velasquez had "knowledge of the falsity of the representation." <u>Id.</u> (quotation and citation omitted).

"[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision" to naturalize Mr. Velasquez. <u>Kungys</u>, 485 U.S. at 770 (quotations omitted). This does not mean "that the misrepresentation or concealment would *more likely than not* have produced an erroneous decision, or even that it would *more likely than not* have triggered an investigation." <u>Id.</u> at 771 (emphasis in original). Indeed "a misrepresentation can be material even where if the truth had been told, the decision maker ultimately would have reached the same result." <u>United States v. Stelmokas</u>, 100 F.3d 302, 316 (3d Cir. 1996).

Finally, to show that citizenship was procured as a result of concealment or misrepresentation, the United States must show that "the Government was denied the opportunity of investigating the moral character of [Mr. Velasquez] and the facts relating to his eligibility for citizenship." <u>United States v. Montalbano</u>, 236 F.2d 757, 760 (3d Cir. 1956).

Here, the United States has met its burden to show that that Mr. Velasquez procured his United States Citizenship through willful misrepresentation and concealment because, in the course of his naturalization application, he (1) failed to disclose that he had committed sexual assault against his stepdaughter; (2) failed to disclose that he had been arrested for those acts; (3)

misrepresented that he had committed no such acts; and (4) misrepresented that he had never been arrested for any such acts.

On January 13, 1995, Mr. Velasquez filed his naturalization application with the INS, in which he indicated that he had never (a) knowingly committed a crime for which he had not been arrested; or (b) been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations.  On September 7, 1995, Mr. Velasquez was arrested and charged with aggravated sexual assault against his stepdaughter when she was less than thirteen years old, which occurred between July 15, 1987 and June 30, 1994.  Then, just one week later, on September 13, 1995, during his INS interview in furtherance of receiving United States citizenship, Mr. Velasquez confirmed, under oath, that he had never knowingly committed a crime for which he had not been arrested, and further told the INS interviewer that he had been arrested only in relation to a deportation proceeding against him in 1985.

Thus, there can be no dispute that Mr. Velasquez (1) concealed the fact of his crime of sexual assault against his stepdaughter; (2) concealed the fact of his subsequent arrest for that crime during the naturalization application process; (3) misrepresented that he had committed no crimes; and (4) misrepresented that he had never been arrested for a crime.  Thus, the United States has met the first element of willful misrepresentation and concealment.

Moreover, the temporal proximity between his arrest and INS interview, combined with his subsequent indictment and plea to aggravated criminal sexual assault, leaves little doubt that Mr. Velasquez knew that he was concealing his crime of sexually assaulting his stepdaughter, and his arrest for that crime, and misrepresenting his criminal and arrest history to the INS

during the course of his naturalization application process. Therefore, the United States has satisfied the second element (willfulness) of willful concealment and misrepresentation.

The United States has also satisfied the third element (materiality) of willful concealment and misrepresentation. It is clear that, had Mr. Velasquez informed the INS that he had sexually assaulted his stepdaughter and was arrested for doing so, that information would have been capable of affecting the decision whether or not to grant him United States citizenship. Indeed, the information substantially alters his answers to critical questions presented in his naturalization application. Moreover, "[s]trict liability morality offenses," including sexual assault of a minor, "are crimes involving moral turpitude because of the community consensus that such offenses, which are enacted for the protection of the child, are inherently antisocial and depraved." Mehboob v. Attorney General, 549 U.S. 272, 277 (3d Cir. 2008).

Finally, the United States has shown that Mr. Velasquez procured his citizenship as a result of (1) concealing that he sexually assaulted his stepdaughter (2) concealed his arrest for that crime; (3) misrepresenting that he had committed no crimes; and (4) misrepresenting that he had never been arrested for a crime. Indeed, by concealing those facts and making those misrepresentations, the United States was denied the opportunity to further investigate Mr. Velasquez's moral character. Had the INS interviewing officer been aware of Mr. Velasquez's crimes, he would have undoubtedly asked Mr. Velasquez about them during his interview, and most likely probed further into Mr. Velasquez's character. Thus, the United States has satisfied the fourth and final element of willful concealment.

Because the United States has satisfied all four elements of willful concealment under Kungys, Mr. Velasquez's United States citizenship warrants revocation under 8 U.S.C. § 1451(a).

### III.  CONCLUSION

For the foregoing reasons, the United States' Motion for Summary Judgment is GRANTED.  Mr. Velasquez's citizenship is hereby revoked and his Certificate of Naturalization, No. 21795990 is hereby cancelled.  Mr. Velasquez is directed to immediately surrender and deliver to the Attorney General the Certificate of Naturalization previously issued to him, as well as any copies thereof, and any other indicia of United States citizenship in his possession, including any United States passport.  Mr. Velasquez is restrained and enjoined from claiming any rights, privileges, benefits, or advantages under any document evidencing citizenship in the United States.

The Court will enter an order implementing this opinion.

          **/s/ Dickinson R. Debevoise**
          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 12, 2014